May it please the court. Good morning. My name is Ethan Vallow and I speak for Joshua Mayweather. There's two claims presented here on direct appeal. As the court knows from the briefing, they're greatly interrelated. First, the district court erred, including by resolving fact disputes without an evidentiary hearing, when it found that Mr. Mayweather did not have a fair and just reason to withdraw his guilty plea one month after he entered it. But the district court had his sworn colloquy testimony at the date of the plea, and it had a sworn declaration from your client, which was inconsistent. What more would an evidentiary hearing have elicited that was necessary before the district court could reach the conclusion that your client was being untruthful in his subsequent sworn testimony that he had a fair and just reason that was nothing more than buyer's remorse? Well, I would answer it in two ways, Your Honor. First, factually, I would respectfully disagree with Your Honor's premise that his subsequent declaration was in conflict with the Rule 11 colloquy. And that is so for multiple reasons. One, the basis for the withdrawal of the plea, as expressed, were fundamentally a complaint about his trial counsel, which the government credited his trial counsel statements, Richard Barnwell's, which were in conflict with the record by Mr. Barnwell's prior comments. At the plea, the district court went into great detail about, are you satisfied, have you had adequate enough time to consult with your counsel? And Mr. Mayweather solemnly swore that all of that was true. Again, Your Honor, perhaps I'm less familiar with the record. I'm unfamiliar with the part of the colloquy, and I've sat through many Rule 11 colloquy in my day, where the judge went through whether he was satisfied with Mr. Barnwell. Indeed, the Rule 11 colloquy had portions where he indicated his dissatisfaction with Mr. Barnwell on multiple occasions, including one informing the court that it was he himself who had to apprise himself of his rights, not Mr. Barnwell. And when pressed whether he had discussed with Barnwell, he agreed with that. Then, but that's not saying he was satisfied, which is a typical part of a Rule 11 colloquy, which my reading of the record has been omitted. Before I get to it, I think there's two other parts about the colloquy that are important. The colloquy is aimed at whether it's knowing and voluntary, which is not the basis of this challenge. The second piece he was challenging is this notion of the suppression motion, which, again, was not addressed in any detail. And the third thing was he – He waived, did he not, during the colloquy? He waived the challenge to any evidence that the government might need. Absolutely. As part of a Rule 11 colloquy, he gave up his right to count, his right to cross and confront – Right. Confront the press and witnesses, his right to present evidence, his right to compulsory process, his right to suppress evidence, his right to suppress statements. This was all given away at the Rule 11 colloquy, as is the norm under Rule 11 to enter a plea of guilty. So – but I don't think they were in conflict, and so I disagree with that. The judge had a basis in that regard. Second, I think it's – this case is controlled by McTiernan, and that's the exact circumstance which this Court's confronted McTiernan with. Let me – let me ask you that. Yes, Your Honor. I have here – tell me whether this is not correct – that Meriwether, in his affidavit, made it very clear to his attorney, Mr. Brownbaugh, that he wanted to litigate his case, including a motion to suppress the January 14, 2008, search of his apartment, and that he did not want to enter a guilty plea to this charge. So doesn't this make this situation fundamentally different than McTiernan, in that in McTiernan, the Court said that the defendant did not have a clear understanding of his – the basis for suppression motion. But here Meriwether acknowledges all the time that he wanted this suppression motion to be made, and here we clearly understood that. I think that's – that is a distinction that can be made. I think what Your Honor is focusing on is when we look at Rule 11 in the Ninth Circuit, we look at whether the individual has a fair and just reason that did not exist at the time he entered his plea. This existed at the time he entered his plea, his knowledge of the fact that he wanted to have a suppression motion be made. That differs from McTiernan. Absolutely. I could not agree with Your Honor more. The difference is, and why McTiernan still controls, is the trial counsel didn't file the motion, instead left the country, went on holiday, and missed the motion deadline. And when he came back, he gave Mr. Meriwether – not only was that ineffective per se under Benfield, where he blew the motion. He disregarded his obligations to the client. He had two weeks from the setting on May 5th. It seems like you're raising something different here. You acknowledge that Meriwether knew full and well that he wished his lawyer to make a suppression motion. I agree. But then you're talking about something else, that sort of the judge put a lot of pressure on the parties, did not honor that stipulation, and you say, I think that's separate in part from the issue of Meriwether's knowledge about the suppression scenario. That would be a separate basis to say this was not a fair and just scenario. I agree with you in part, Your Honor. I think – and I'm not – I don't think the court put any pressure on these parties. I think the court set a reasonable schedule. On May 5th, you had an initial appearance before a respected district judge, and he said you have two weeks for motions, three weeks until the hearing, four weeks for trial. On a small case, not atypical. So what's your problem? What's your complaint? The lawyer left and didn't follow the motion. The lawyer blew it off and didn't give good cause in telling the judge. But Meriwether didn't say a word during the allocution about what he subsequently said in his affidavit, that he wanted his lawyer to make a suppression motion. No, because his lawyer, as Barnwell conceded, came back and told him, I had blown the motions deadline, these were undisputed facts. And what he also told Mr. Meriwether was, not only did I go on vacation and miss the deadline, you now have two choices. You can't bring the motion. You can go to trial next week, and I've been on vacation for the last two weeks, in a case that was set two weeks ago, or you can plead guilty. And that was also a false dichotomy because even after blowing the deadline, which was rank incompetence, what a proper thing to advise Mr. Meriwether of is, there was a third option, which is I have to now withdraw as your counsel. I've been ineffective. I missed intentionally the motion deadline so I could go on an international holiday, and you're entitled to a new lawyer who might bring the motion you want. Let's say all of this is so, but let me follow up on what Judge Talman started to explore. I read carefully the plea allocution. I guess being a district court judge sitting by designation, I'm particularly concerned about whether I give proper plea allocutions. And it seems like the judge here, regardless of what may have been said about putting pressure or not putting pressure or setting this schedule or that schedule, conducted an extraordinarily comprehensive plea allocution. And what impresses me the most is that your client was not a shy, retiring person. He participated in this plea allocution in ways which I don't regularly see in my court. For example, he wasn't timid. He asked the judge about the collateral consequences, what the plea agreement meant when it talked about waiving his right to appeal. That was explained. And he also had this question. I'm trying to understand why in the police report it says that the shotgun was next to the refrigerator upon entering, and then later in the police report it says the shotgun was behind the refrigerator. The reason why I'm pointing it out is that this is not a person who sat timidly by, you know, doing this entire plea allocution. Why in God's name could he not have said, in addition to my concern about where the shotgun was, how come there's no suppression motion made? Let me answer in two ways, and I'll try to reserve some time. This is not an attack on the Rule 11 colloquy. This is a statement that the basis is that his lawyer, when he blew the deadline, was inadequate. He raised it in a timely fashion. It's a liberal and just standard. And the court decided that his lawyer, who contradicted himself and made statements that could not be reconciled with the basis for continuance, he credited this lawyer. McTiernan says he was not allowed to do that and vacatories required. He discredited Mr. Mayweather on the basis of the inconsistencies between the very careful allocation and the sworn statements in the declaration so that he is no longer considered a credible witness. Then there isn't anything left to refute in Mr. Barnwell's declaration, which is I went over in extreme detail the merits of filing the motion to suppress, and Mr. Mayweather never told me that he wanted to pursue. If he had, I would have gone to trial. I was happy to do that. Barnwell claims he explained stuff to him when the record shows he was out of the country. The government on page 9 of their brief admit that they didn't even get him the plea agreement until he returned back. Barnwell later says... How was he supposed to explain to him that the defendant did not understand? That's what I tried. That's not the standard here. We're not attacking the plea colloquy. I'm not talking about the plea colloquy. You're talking about comprehension and understanding by the defendant, as if somehow his lawyer did not represent him properly, did not do what he had to do because he was out of the country, compromised his rights. I want to understand how. He had a motion due on May 20th. He left the country on May 15th hoping to get a continuance belatedly granted. It was denied. He returned 10 days later and showed up at the motion hearing with a plea agreement the night before, hadn't seen his client and said, Oh, it says the motion hearing for the motion you want to take here. Why do you say the plea 11 colloquy is an irrelevancy? Your client had every opportunity to speak up, and he did speak up about a number of things. He didn't say boo about the fact that he wanted a suppression motion made, even though he knew that this is what he deserved. But you could withdraw afterwards even with a rule 11 colloquy that's adequate. That's Garcia. That's McTiernan. That's Diaz. That's Rios. You can withdraw a valid plea as long as you have a fair and just reason. Fair and just reason, but the problem is that by not raising this issue, what we have here is a factual finding, which seems to me to be clearly supported by the record, that all we had was a case of buyer's remorse. Well, I respectfully disagree. I think under McTiernan, the judge did resolve factual disputes. There's a dispute between Barnwell against Mr. Mayweather. It all depended upon, with all due respect, McTiernan only depended and hung on the suppression issue. That was the basis for Judge Minor's decision. Judge Fisher called Mr. McTiernan a liar. I disbelieve you. You have buyer's remorse. You're incredible. She said all the same things Judge Walter said to Mr. Mayweather. But it was all based upon the knowledge that the defendant had. You acknowledge that here we don't have that issue. But we have the ineffective assistance claim, which was litigated below, and which required an evidentiary hearing because he abandoned his client. And that's what makes this get an evidentiary hearing. Thank you, Counselor. I'm over my time. I hope to get some fit for rebuttal. No, thank you, Counselor. You have consumed all your time. We'll hear from the government. May it please the Court. Greg Lester for the United States. The Court has identified, I think, several of the problems with the defendant's argument. In this case, I think that the – if I was correct, that the courts, the district court below, did resolve some factual discrepancies between the defendant and his previous testimony and his previous actions. So – What about the fact there was no evidentiary hearing here? Your Honor, what's – in a case cited by the defense, it's the Magia case. It's a – or Magia case. It refers to the fact that, you know, obviously the district court's credibility assessments are given great weight when it's had. And the basis for that is when the district court has had an adequate opportunity to actually receive evidence. In this case, the district court even mentioned this when it was making its ruling on the motion to withdraw. The district court had already been through both the plea colloquy and the previous hearing that preceded that with the defendant. Also, there was a hearing on August 18th where the defendant raised the issue of – that he believed he wasn't guilty of the 924C charge and that there was a conflict with his counsel. This was the hearing where Mr. Barnwell was relieved. And at that point, the defendant was claiming that, no, no, what's wrong with my plea was the fact I'm not guilty of the 924C because I did not use or carry the firearm. So obviously based on a misunderstanding or reference to approve the previous state of the law before the Bailey case. But that hearing – and then there's the motions hearing where – or the hearing on the motion to withdraw where, again, the defendant – the court with district court was presented with evidence from the defendant, all of which were inconsistent. So the district court had a good record before it upon which to make the You know, when I was preparing for this argument, I started thinking about an analogy sort of to the civil context. This is sort of like when a – you know, you can't defeat a summary judgment motion by contradicting in a later declaration your earlier deposition testimony. You can't create a genuine issue of material fact in that sentence. And I thought that was an applicable analogy to this where the defendant does one thing, swears one thing at the plea colloquy, says something different at the hearing where his counsel is relieved, and then yet a third thing where when he submits his declaration in support of the motion to withdraw his plea. I think Judge Walter had more than adequate basis upon which to make the credibility determination without an evidentiary hearing. Do you think that at the plea colloquy the judge – the judge should say do you specifically have any suppression motions that you Do you think that should be a specific basis for inquiry for Rule 11 purposes? You mean by modifying Rule 11 to require it? Specifically require that question to be posed. I mean, I really think that, you know, more generally it's already, you know, you understand that you're waiving any defenses you might have. But there was not a specific question posed to the defendant or his attorney dealing with the suppression motion in this particular case, right? There was not to the defendant, to the attorney, he asked if there was any illegal evidence. He asked if there was any illegal evidence. That was basically the question. But that did, you know, certainly put the defendant on notice that they're talking about illegally seized evidence. And in addition to the plea agreement, which as the court has pointed out, you know, the defendant understood and went through and asked about specific provisions. He did not ask any questions about the provision where he said – Totally interactive defendant. And where, yeah, where he said there's a provision in the plea agreement, which he cited in the briefs, it says, any illegal search of my property I am specifically waiving. I can't imagine this defendant not understanding that. He, when we came out for the plea colloquy, the defendant stood up and said, I signed a deal. And he asked questions about the deal. And he appeared to Judge Walter to understand the deal, to me to understand the deal. And that's – What did he say about McKinnon? Well, I mean, I think the courts identified the issue with McKinnon. McKinnon, there was an absence of evidence. I mean, it had to be sent back for an evidentiary hearing because there was really no evidence contradicting McKinnon's claim that he had not been advised of the possibility of filing a suppression motion under Title III. So in this case, it's abundantly clear that the defendant knew about the possibility of a suppression motion. He admits that by saying, I told my lawyer to move to suppress it. I mean, he has to necessarily admit that he knew about it if he told his lawyer to do it. The credibility determination comes when he claims that his lawyer said he was going to do it and the defendant claims – and the defense lawyer expressly claims through a thorough declaration that, no, I did not. I told him I would do it at any time. He did not tell me to do it. And ultimately, it's consistent with the defendant's statements of the plea colloquy. I signed the deal. So that's with regard to the suppression motion. With regard to the statutory maximum, I can understand why the Court hasn't spent any time on it because actually he was advised of the statutory maximum. That is just a totally frivolous argument. Okay, so I won't spend time on it. And then with regard to the ineffective assistance claim, I mean, the problem here is the problem of trying to evaluate that on appeal is the same you always have. I mean, there's no record of what might have happened or would have happened. In this case, had the suppression motion been filed, that was never developed factually. I mean, this cannot be decided on appeal. The proper form for that, of course, is a 2255. So other than that, Your Honor, I can answer the Court's questions, but I don't want to delabor. Thank you, Counsel. Thank you. The case just argued will be submitted for decision. Court will adjourn. All rise.
judges: Block, O'scannlain, Tallman